C. M. FALLON, Respondent, *v* F. STAHL, Appellant.

April 21, 1885.

PLEADING—COUNTER-CLAIM.—A plea of counter-claim which does not state the transaction out of which arose a certain item, is not sufficient to warrant the introduction of evidence thereto.

APPEAL from the St. Louis Circuit Court, BARCLAY, J. *Affirmed.*

G. A. CASTLEMAN, for the appellant.

T. J. ROWE with G. DENISON, for the respondent.

THOMPSON, J., delivered the opinion of the court.

The only question which the appellant raises is that the referee before whom the cause was tried erred in rejecting an item of $183.15, and that the court erred in overruling exceptions to this part of the referee's report. The action is for a balance due on a long account containing many items. The answer contained four counts: 1. A general denial; 2. A plea of payment; 3. A counter-claim; 4. Another counter-claim.

The finding of the referee in respect of the amount due on the plaintiff's account, which disposed at once of the issue made by the general denial and by the plea of payment is not complained of. It is not complained that the referee erred in rejecting the item of $183.15 as not being well pleaded in the second counter-claim, but it is contended that it was sufficiently pleaded in the first counter-claim, and that, upon the special facts which the referee found at the request of the defendant in respect of this item, the circuit court ought to have overruled his conclusion of law rejecting it, and ought to have allowed it, and abated the amount which the plaintiff was allowed to recover to that extent.

It should be said in the first place, that we have great difficulty in dealing with the question, from the fact that the testimony which was had before the referee has not been preserved in the bill of exceptions, and we have nothing to go upon except the pleadings and facts found by him. It may be conceded that, if the referee found an issue which had not been properly raised by the pleadings in favor of the defendant, and then refused to recommend judgment accordingly, and if the court, following the advice of the referee, declined to give judgment accordingly, this would be error which could be corrected by us by treating the facts found by the referee as a special verdict and entering the proper judgment here, or directing the circuit court to enter it. But on a comparison of the allegations of the third and fourth counts of the answer presenting the two separate counter-claims already

named, with the facts found by the referee touching this item of $183.15, we are of opinion that the referee was correct in his holding, that he could not, under the issue as framed, allow the defendant to recover this amount by way of counter-claim. In order to make this apparent, it will be necessary to quote the language of the third and fourth counts of the answer, and also the language of so much of the referee's report as related to this contested item.

The allegations of the third count of the answer are as follows: "That plaintiff, doing business under the name and style of Wesley Fallon, is indebted to this defendant for a balance on an open, mutual and current account in the sum of sixteen hundred and sixty-two (1662) and 39-100 dollars for horse and buggy-pole and other articles sold and delivered to plaintiff by defendant, and for keeping horses, buggies and harness, and feeding, caring for and repairing the same at the special instance and request and for the use and benefit of plaintiff, and for the use of buggies, horses, carriages and other vehicles hired and let to plaintiff by this defendant at the special instance and request of said plaintiff and used by plaintiff, and for money had and received by plaintiff to and for the use of defendant, an itemized bill whereof and the charges therefor is hereto attached and marked "*Exhibit B*"—the items and charges whereon are reasonable and just, and which plaintiff promised and agreed to pay to this defendant. Wherefore defendant asks judgment against plaintiff in said sum of sixteen hundred and sixty-two (1662) and 39-100 dollars, with interest thereon and costs."

The allegations of the fourth count are as follows: "And for another and further cause of action against plaintiff this defendant says that said plaintiff is indebted to this defendant for money had and received by plaintiff to the use and benefit of this defendant in the sum of two hundred and three (203) and 15-100 dollars, being sums collected by defendant from —— Shaw and Bunt Schuster and other persons who were in the employ

of the defendant and whose names are unknown to this defendant, and the further sum of fifty-six dollars collected by plaintiff for the use and benefit of this defendant, from Frank Dorris, all of which sums were collected, had and received by plaintiff for the use and benefit of plaintiff [Sic!] and which in consideration thereof, said plaintiff then and there promised and agreed to pay to this defendant. Wherefore defendant prays judgment against said plaintiff in said sum of two hundred and fifty-nine (259) and 15-100 dollars and for interest and costs."

The referee made a general finding to the effect that the plaintiff, Mrs. Fallon, had, after the death of her husband, continued to carry on the business in which he had been engaged namely, that of manufacturing, repairing, selling and trading in carriages, buggies and other vehicles, under his name of Wesley Fallon, committing the entire management thereof to John F. Fallon; and that the defendant, Frederick Stahl, had during the period in controversy been engaged in the livery stable business, and had had a running account with the plaintiff for work done and material furnished, which remained open and unsettled. Then after disposing of the questions arising on the plaintiff's account, and finding for the defendant upon all the items embraced in the account filed as an exhibit to the third count of his answer, being his first counter-claim, except one item of $1.50 not disputed, and except also a series of items embracing, as the referee states, the 5th page of the said exhibited account, amounting in the aggregate to the sum of $183.15, he proceeded to make a finding upon the second counter-claim, being the fourth count in the answer, the only count in which an attempt was made to allege the transaction out of which this item arose as follows: "Second counter-claim. As to this counter-claim I feel bound to find against the defendant and in favor of the plaintiff, on issues joined. The claim is that plaintiff collected certain money to use of defendant amounting to $259.15 as shown in pp. 3, 4, and 5 of Ex. B., from Shaw, Schuster,

Dardis and others unknown. It is not proved to my satisfaction that any such moneys were received by plaintiff or her manager. Inasmuch, however, as defendant's counsel, in his brief, has requested that I should find the facts in regard to the subject matter of this counter-claim with a view to possible amendment of the pleading hereafter, I report the following:

1. As to the Shaw matter, page 5 of Exhibit B., I find that defendant had been stabling and caring for a certain pony, harness and phaeton, belonging to a man named Shaw, and that the latter had become indebted to him in the sum of $183.15 on account of such livery service, for which sum, of course, Mr. Stahl had his lien under the statute (R. S., sects. 196-97); that Mr. John F. Fallon bought this pony, harness and phaeton, from Shaw, took them away from Stahl's stables and told the latter (the defendant) to charge the amount of his livery bill, the $183.15, to the house of Wesley Fallon, and that this was done. There is no proof that Fallon paid Shaw anything for the pony, etc., and no proof that Stahl's bill was ever paid by Shaw or by anybody."

It should be said that it does not appear from the record that the defendant made any application to the court to amend his answer so as to make an allegation respecting this "Shaw matter" which would present an issue to which the gratuitous finding made by the referee touching the same would be applicable. It is therefore quite apparent that, as the record stands, the finding by the referee of the facts touching this controverted item was a finding of a fact not in issue, and therefore it was not competent for the circuit court to give judgment upon it as upon a special verdict. It will be seen that, according to the findings of the referee, this transaction was quite different from any of the other transactions had between the parties which form the subject of this controversy. It was nothing more nor less than the finding that Mr. John F. Fallon, the plaintiff's business manager, had agreed for the plaintiff to pay to the defendant a debt of $183.15, due and owing by a third person named

Shaw (to secure which debt the defendant had a lien under the statute upon a certain pony, harness and phaeton belonging to Shaw), in consideration of the purchase of the pony, harness and phaeton by John F. Fallon from Shaw, and a delivery of the same by the defendant to Fallon, and a consequent release by the defendant of his lien upon the same. Now, it cannot be contended that a transaction of this peculiar character can be brought under any of the allegations of the third count of the answer, being the defendants' first counter-claim. It was not a sum due "for horses, buggy-poles and other articles sold and delivered to plaintiff by defendant;" or "for keeping horses, buggies and harness, and feeding, caring for and repairing the same, at the special instance and request, and for the use and benefit of plaintiff;" or "for the use of buggies, horses, carriages and other vehicles hired and let to plaintiff by this defendant, at the special instance and request of said plaintiff, and used by plaintiff;" or "for money had and received by plaintiff to and for the use of defendant." Nor is the failure to allege the contract upon which the defendant claims the right to recover this item cured by including it in the itemized account annexed as an exhibit to the first counter-claim, because the items which are said to relate to this transaction are items generally similar in their character to the rest of the items in the account, namely, items of charges for keeping a pony and phaeton, for shoeing the pony, repairing the harness, etc. They contain no intimation whatever of a contract of novation between the plaintiff and the defendant whereby the plaintiff agreed to pay the debt of a third person named Shaw.

Then, if we come to the fourth count of the answer, being the second counter-claim, the same conclusion is unavoidable; because, although Shaw is mentioned in this count, yet as the claim here set up is for "sums collected by defendant from Shaw and others for the benefit of the defendant and upon an agreement to pay the same to the defendant;" and so far as the Shaw mat-

ter is concerned the referee finds that no such sum was collected. Indeed, it is not contended that the referee erred in refusing to find for the defendant in respect of this Shaw transaction, under the second counter-claim.

Going through the matter with laborious particularity, it is very apparent that the facts found by the referee touching this "Shaw matter" of "$183.15," with the idea that a subsequent amendment of the pleading might make his finding relevant, is not in the nature of a special verdict upon which judgment can be given, because it is a finding of facts touching a transaction not put in issue by the pleadings. The circuit court therefore did not err in overruling the exceptions to the referee's report, and the judgment must be affirmed. It is so ordered. All the judges concur.